**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **IMPALA PLATINUM HOLDINGS LIMITED, et al.**<br><br>**v.**<br><br>**A-1 SPECIALIZED SERVICES AND SUPPLIES, INC., et al.** | **CIVIL ACTION**<br><br>**NO.  13-2930** |

<u>**MEMORANDUM RE CONFIRMATION OF ARBITRATION AWARD**</u>

Baylson, J.                                                                                     April 26, 2016

   Plaintiffs Impala Platinum Holdings Limited and Impala Refining Services Limited
(collectively, "Impala") move to lift the stay currently imposed on this suit, confirm the final
arbitration award and enter judgment in conformity therewith in this diversity breach of contract
action.  Defendant A-1 Specialized Services and Supplies Inc. ("A-1") opposes Impala's motion
and moves to vacate the final arbitration award.  For the following reasons, Impala's motion is
GRANTED and A-1's motion is DENIED.

## I.  Factual Background & Procedural History

   This lawsuit began with Impala's filing of its Complaint on May 28, 2013.  (ECF 1).  In
its Amended Complaint, filed on August 1, 2013 (ECF 12), Impala asserted four (4) claims:
(1) breach and anticipatory breach of contract; (2) and (3) fraudulent transfer; and (4) breach of
fiduciary duty.  In response, defendant A-1 moved to dismiss for failure to state a claim or to stay
pending arbitration (ECF 18), defendant Slogam Limited Partnership ("Slogam") moved to
dismiss for failure to state a claim or to stay pending arbitration (ECF 17), and defendant Suresh
Khosla ("Suresh") moved to compel arbitration and dismiss claims, or, in the alternative, to stay
the action pending arbitration (ECF 19).

On December 24, 2013, the parties entered into an agreement providing, among other things, for first the mediation and, if necessary, binding arbitration (the "Dispute Resolution Agreement") of the claims at issue.  (ECF 42, Ex. B ("D.R. Agmt.")).  The Dispute Resolution Agreement provided the arbitration be before the London Court of International Arbitration ("LCIA") and that, "[p]ursuant to Article 26.1 of the LCIA Rules, the Tribunal's award shall include the statement of the reasons for it."  (D.R. Agmt. § 4(e)).  The Dispute Resolution Agreement further provided that, "[i]n the U.S. Court, all proceedings related to the arbitration will be governed by Chapter 1 of the Federal Arbitration Act, 9 U.S.C. §§ 1-16."  (D.R. Agmt. § 5).  Finally, the Dispute Resolution Agreement stated "[t]he arbitration award may be confirmed by the U.S. Court pursuant to Section 9-11 of the Federal Arbitration Act, 9 U.S.C. §§ 9-11" and that, "[p]ursuant to Chapter 1 of the" FAA, "an order confirming the arbitration award will be entered in the U.S. Action as a final judgment" and that such order "will have the same effect as a final judgment entered by the U.S. Court in a case that was adjudicated by the U.S. Court."[1]  (D.R. Agmt. § 6).

The Court entered a consent order, signed by all parties, on January 9, 2014 (the "Consent Order"), whereby the parties agreed to enter mediation.  (ECF 23).  If mediation proved unsuccessful, the parties would proceed to arbitration in the LCIA.  On that same date, the Court ordered the proceedings in this action stayed.  (ECF 24).

The mediation indeed proved unsuccessful and, on March 25, 2014, Impala filed a Request for Arbitration with the LCIA, to which A-1 responded on April 28, 2014.  (ECF 43, Ex. A ("Final Award") ¶¶ 13-14).  The LCIA Tribunal consisted of a panel of three (3) arbitrators.

---

[1]  According to the Dispute Resolution Agreement, the term "U.S. Action" was defined as "the case captioned *Impala Platinum Holdings Limited, et al. v. A-1 Specialized Services and Supplies, Inc., et al.*, No. 13-CV-2930, now pending in the Eastern District of Pennsylvania," and the term "U.S. Court" was defined as "the Eastern District of Pennsylvania."  (D.R. Agmt., *Definitions*).

Impala nominated Mr. David Owen, QC; A-1 nominated Lord Leonard Hoffmann; and the LCIA Court nominated as President of the Tribunal Professor Bernard Hanotiau.  (Final Award ¶¶ 6-8). On June 16, 2014, the Tribunal issued Procedural Order No. 1.  (Final Award ¶ 25).  After A-1 sought an extension of time to submit its Statement of Defence and Counterclaim to the Tribunal, both A-1 and Impala provided new proposed dates for the procedural timetable, and the Tribunal issued an Amended Procedural Order No. 1 (together with Procedural Order No. 1, the "Procedural Orders") on December 12, 2014.  (Final Award ¶¶ 28-30).  Witness statements, expert reports, and factual and legal exhibits were submitted by the parties according to the timetable and guidelines provided in the Procedural Orders.  Procedural Order No. 1 provides, in Paragraph 6.5, that "[e]ach Party is entitled to cross-examine witnesses or experts at the Hearing by notification to the Party that has submitted the witness statement(s) or expert report(s) and to the Tribunal on or before the date indicated in ¶ 1.1 above."  (ECF 47, Ex. 1 ("First O'Hayer Decl."), Ex. E ("Proc. Order"))  Amended Procedural Order No. 1 provides the same.  (First O'Hayer Decl., Ex. F (Am. Proc. Order)).  No provision was made, in either of the Procedural Orders, for direct examination of witnesses or experts at the oral evidentiary hearing.[2]

Approximately one week before the oral evidentiary hearing was to be held, A-1 informed the Tribunal and Impala that Mr. Rajesh Seth ("Mr. Seth"), A-1's principal witness in the arbitration, had recently undergone a surgical operation that would not allow him to be present at the hearing in London.  (Final Award ¶ 82; see also First O'Hayer Decl., Ex. L).  A-1 urged that, rather than proceed with the oral evidentiary hearing as originally scheduled, the parties should opt instead to either (1) adjourn the evidentiary hearing until a later date, or (2) conduct a split hearing, with the first part of the hearing taking place as originally scheduled

---

[2]        Paragraph 6.1 provided, in pertinent part: "If a Party wishes to adduce evidence by fact witnesses or expert witnesses, it shall submit *written* witness statements and expert reports together with the submissions mentioned in

and the second part, to include Mr. Seth's examination, taking place at a later date.  (Final Award ¶ 82).  A-1 preferred the first option (id.), while Impala preferred the second (id. ¶ 85).  The arbitration oral evidentiary hearing was held July 6-8, 2015, in London.  (Final Award ¶ 90).

On the first day of the hearing, A-1 and Impala "made extensive oral submissions in relation to A-1's request for the rescheduling of the hearing following" Mr. Seth's illness, and the Tribunal, "after deliberation, decided to proceed with the hearing, as originally envisaged by Amended Procedural Order No. 1, and, upon Impala's request, to have a two-day additional hearing on 19 and 20 November 2015, where Mr. Seth, and, potentially, some of Impala's witnesses, would be examined and cross-examined."  (Final Award ¶ 91; see also First O'Hayer Decl., Ex. O ("Day 1 Tr.") 2:2-45:13).

The Tribunal rendered the following decision in the Final Award, dated December 9, 2015:

> (i)     Orders A-1 to pay to Impala $7,884,527 on Loan A, $74,453,422.09 on Loan B, $95,718,574.84 on Loan C, $7,045,922.12 on the special cash advance and $4,565,617.37 on the Trade Debts, for a total amount of $189,668,037.2;

> (ii)    Orders A-1 to pay to Impala pre-award interest equal to 2% on the amounts of $74,453,422.99, $95,718,574.84, $7,045,922.12 and $4,565,617.37 from 16 April 20-13 until the date of this award and on the amount of $7,884,527 from 7 July 2015 until the date of this award;

> (iii)   Orders A-1 to pay to Impala post-award interest equal to 2% on the total sum of $189,668,037.2 from the date of this award until the date of payment;

> (iv)    Dismisses A-1's counterclaim in its entirety;

> (v)     Decides that A-1 shall bear the whole of the arbitration costs in the amount of GBP 228,268.76, and shall reimburse Impala the amount of GBP 115,021.38, representing the registration fee and advances already paid by Impala on account of

---

¶¶ 1.1(a)-1.1(b) above."  (emphasis added).

the arbitration costs of this case, less the balance of funds to be
returned by the LCIA;

(vi)    Decides that A-1 shall pay to Impala $1,844,064.62, being
the whole of their legal and other costs, and

(vii)   Dismisses any other relief or claim.

(Final Award ¶ 255).

Thereafter, on January 22, 2016, Impala moved to Confirm Arbitration Award, Lift Stay
and Enter Judgment in Conformity with Final Arbitration Award.  (ECF 42, ("Mot. Confirm")).
On February 8, 2016, A-1 filed its Opposition to Impala's Motion to Confirm (ECF 44) and
moved to Vacate the December 9, 2015 Arbitration Award of the London Court of International
Arbitration (ECF 46, 47, ("Mot. Vacate")).  Impala filed its Opposition to A-1's Motion to
Vacate on February 25, 2016, (ECF 52, ("Pls.' Opp'n")), to which A-1 replied on March 8, 2016
(ECF 55, 56, ("Def.'s Reply")).  Impala then filed a Sur-Reply Brief in Opposition to
Defendant's Motion to Vacate (ECF 57, ("Pls.' Sur-Reply")), which this Court permitted by
Order dated March 18, 2016 (ECF 59).[3]

## II.    PARTIES' CONTENTIONS

A-1 argues that vacatur of the Final Award is mandated because the Tribunal was guilty
of misconduct in both (1) refusing to postpone the hearing in light of Mr. Seth's hospitalization
and (2) failing to provide a procedure by which A-1 could (a) adduce additional testimony from
Mr. Seth himself and (b) recall witnesses.  (Mot. Vacate at 5).  A-1 identifies seven (7) instances
in which A-1's presentation of evidence and argument at the oral evidentiary hearing was
prejudiced.  (Mot. Vacate at 6-8).  A-1 further argues that these seven instances of prejudice it

---

[3]       There is, also currently before the Court in this matter, the now fully briefed motion by Impala for Leave to
File Motion to Lift Stay and for Leave to Amend the Amended Complaint and File Second Amended Complaint
(ECF 60), which this Memorandum does not discuss.  Impala has also moved to intervene in a related case, Civil
Action 13-2510.

*actually* suffered outweigh any prejudice that Impala *may have* suffered had the hearing been postponed, because the parties had already waited eleven (11) months for a hearing and Impala could have been compensated for any such delay through an award of prejudgment interest. (Mot. Vacate at 8-9).

Impala disagrees, contending that A-1's Motion to Vacate must be denied for two reasons. First, Impala argues that A-1 waived the issues raised in its Motion to Vacate because A-1 failed to raise its objections during the arbitration hearing. (Pls.' Opp'n at 10-12). Second, A-1 failed to meet the very limited review afforded an arbitration panel's procedural decisions. (Pls.' Opp'n at 13). In arguing this second point, Impala contends that A-1 articulated the wrong standard by which to determine whether an arbitration panel's denying a request to postpone hearings warrants vacatur of the award. According to Impala the appropriate test demands that the party seeking vacatur must prove by clear and convincing evidence that the arbitration panel had no reasonable basis for its decision. (Pls.' Opp'n at 16). Impala contends that A-1 cannot meet this standard because the Tribunal had not just one, but several reasonable bases on which to ground its decision not to postpone the oral evidentiary hearing. (Pls.' Opp'n at 22-25). Finally, taking each of A-1's seven points in turn, Impala argues that none is indicative of prejudice. (Pls.' Opp'n at 26-30). Thus, Impala argues that because A-1 cannot show it did not receive a fair hearing, its motion for vacatur of the Final Award must be denied.

In reply, A-1 argues that it did not waive its objection to the Tribunal's denial of its request for postponement by continuing with the oral evidentiary hearing because once A-1 raised its argument before the Tribunal, A-1 preserved the issue for later argument in a motion to vacate. (Def.'s Reply at 3). Furthermore, A-1 contends that Impala misstates the law in the Third Circuit when it argues that A-1 must show there was "no reasonable basis" for the

Tribunal's refusal to postpone the hearing.  (Def.'s Reply at 6-7).  Nevertheless, A-1 argues, it has met the more stringent "no reasonable basis" test because: (1)  Mr. Seth's illness was unexpected and so A-1's request for postponement on the first day of the hearing is not a reasonable basis for refusal; (2) post-hearing briefing was inadequate to mitigate the harm of Mr. Seth's absence from the hearing; and (3) Impala's charges of prejudice it would have suffered from a postponed hearing are greatly exaggerated.  (Def.'s Reply at 7-9).  Finally, A-1 contends that vacatur is warranted because, under 9 U.S.C. § 10(a)(3), it was deprived of a fair hearing.  In so arguing, A-1 first takes issue with Impala's point-by-point dissection of its alleged instances of prejudice, stating that the Court must instead "consider the collective prejudice suffered by A-1."  (Def.'s Reply at 11).  A-1 vigorously denies that its arguments are mere "conjecture," contending that the law provides for vacatur where the moving party proves that the result might have been different had the Tribunal postponed the hearing.  (Def.'s Reply at 11-12).

In a Sur-Reply, Impala reaffirms that the "no reasonable basis" test is the governing standard and that A-1 has neither met that test nor demonstrated that it was denied a fair hearing.  (Pls.' Sur-Reply at 7-15).  In addition, Impala raises a new point in support of its argument for waiver, providing that A-1 failed to take advantage of the two (2) additional days set aside by the Tribunal and that "[i]t was clear to everyone . . . that those two days were reserved for the cross-examination of Mr. Seth *and whatever other process A1 could demonstrate was required to reduce any prejudice it may have suffered by reason of Mr. Seth's absence at the July hearing*."  (Pls.' Sur-Reply at 4) (emphasis added).  As such, Impala argues A-1's acknowledgment at the end of the hearing that it was satisfied with the procedure the Tribunal followed, without taking advantage of those additional two days, constitutes a waiver of any objection to the Tribunal's refusal to postpone the hearing.  (Pls.' Sur-Reply at 5).

A-1 provides additional briefing to address this new position taken by Impala which argues that the record clearly demonstrates that all parties—A-1, Impala, and the Tribunal—recognized that the additional two days were only to be used for cross-examination of Mr. Seth, if Impala so required.  (ECF 62 ¶ 4; see also ECF 62, Ex. 6 ("Third O'Hayer Decl.") ¶¶ 5-8).

The Court held oral argument on April 25, 2016.  Counsel for A-1 reiterated its arguments as to the unfairness of the Tribunal coming to a final decision without giving Mr. Seth an opportunity to appear.  A-1 also criticizes the panel for coming to a decision on the merits without having ever seeing Mr. Seth in person, and impliedly rejecting his witness statements without ever observing him.  The fact remains that Mr. Seth submitted four separate witness statements, and the Tribunal did consider them.  A-1 further argues that given Mr. Seth's undisputed medical condition, the Tribunal should not have "rushed to judgment" without extending the time for briefing.  The Court notes that A-1 has filed, in this Court, as part of its papers in its motion to vacate and in opposition to confirmation of the award, an "offer of proof" as to what Mr. Seth would have testified to if he had been allowed to present additional testimony.  (See ECF 47, Ex. 2; ECF 62, Ex. 4).

## III.   LEGAL STANDARDS

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, explicitly permits the use of arbitration and specifically authorizes individuals in commercial transactions to contract for arbitration.  The FAA evinces a "liberal policy favoring arbitration," and so the legislation "compels judicial enforcement of a wide range of written arbitration agreements."  Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 111 (2001).  Under the FAA:

> If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply

> to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified or corrected as prescribed in section 10 and 11 of this title.

9 U.S.C. § 9.

Section 10 of the FAA provides, in pertinent part:

> In any of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration—
>
> (1)  where the award was procured by corruption, fraud, or undue means;
>
> (2)  where there was evident partiality or corruption in the arbitrators, or either of them;
>
> (3)  where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or any other misbehavior by which the rights of any party have been prejudiced; or
>
> (4)  where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a).

These four grounds are the exclusive grounds for vacatur of an arbitration award.  Hall Street Assocs., L.L.C. v. Mattel, Inc., 552 U.S. 576, 584 (2008).  As a result, a district court's position "is generally to affirm easily the arbitration award under this extremely deferential standard—a result that is squarely in line with the purpose behind the FAA where courts are tasked with reviewing an arbitration decision."  Id.  The Third Circuit has often recognized the "exceedingly narrow" and "extremely deferential" review a district court has over an arbitration award.  Metromedia Energy, Inc. v. Enserch Energy Servs., Inc., 409 F.3d 574, 578 (3d Cir. 2005) (quoting Dluhos v. Strasberg, 321 F.3d 365, 370 (3d Cir. 2003)); see also Freeman v.

Pittsburgh Glass Works, LLC, 709 F.3d 240, 251 (3d Cir. 2013).  But, "[e]ffusively deferential language notwithstanding, the courts are neither entitled nor encouraged simple to 'rubber stamp' the interpretations and decisions of arbitrators."  Matteson v. Ryder Sys., Inc., 99 F.3d 108, 113 (3d Cir. 1996).

## IV.   DISCUSSION

### A.   A-1's Motion to Vacate the Final Award

A-1's Motion to Vacate argues that the Final Award should be vacated under Section 10(a)(3) of the FAA, which provides the a district court may vacate an award "where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown."  The Third Circuit defines "misconduct' under 9 U.S.C. § 10(a)(3) as conduct 'which so affects the rights of a party that it may be said that he was deprived of a fair hearing.'"  Coastal Gen. Constr. Servs. Corp. v. Virgins Islands Hous. Auth., 98 Fed. App'x 15, 159 (3d Cir. 2004) (quoting Newark Stereotypers' Union v. Newark Morning Ledger Co., 397 F.2d 594, 599 (3d Cir.), cert. denied, 393 U.S. 954 (1968)).  Here, the parties disagree not only as to whether the Tribunal's refusal to postpone the oral evidentiary hearing constitutes misconduct warranting vacatur of the Final Award, but also as to what test governs this Court's review of that decision. A-1 argues that only the fair hearing standard applies, while Impala contends that, in addition to the fair hearing standard, A-1 must show that there was no reasonable basis for the Tribunal's decision.

### 1.   The "Reasonable Basis" Test Applies

The parties disagree what standard governs a district court's review of an arbitral tribunal's refusal to postpone a hearing.  The Third Circuit has not squarely addressed the issue. However, a review of those decisions by Courts of Appeals which have so confronted the issue

demonstrates that an arbitrator's decision to deny a postponement should not be disturbed if there is a reasonable basis for the decision.[4]  In Schmidt v. Finberg, 942 F.2d 1571 (11th Cir. 1991), the Eleventh Circuit considered an appeal of a district court's denial of a motion to vacate an arbitration award where the appellants challenged the tribunal's refusal to postpone the hearing *or* extend it to receive an important witness's testimony.  The issue, as framed by the Eleventh Circuit, was "whether there was any reasonable basis for the arbitrators to refuse to postpone the hearing or to continue it in order to receive [the witness's] testimony."  Id. at 1574.

Significantly, the Schmidt court was not concerned with whether the tribunal had articulated a reasonable basis, as the panel's response was a terse denial, but whether or not a reasonable basis was evidenced in the record before the court.  Id.  The Schmidt court found not one, but *four* "grounds on which the panel may have acted in denying" the postponement request, including that the arbitral panel may have rested its decision on the underlying policy of arbitration to expeditiously handle commercial disputes.  Id. at 1174-75.

Nor has the Third Circuit foreclosed the application of the reasonable basis test in cases where an arbitral tribunal has refused to postpone a hearing.  Courts in this District routinely apply the "reasonable basis" test to motions to vacate arbitral awards based on a refusal to postpone the hearing.  Rita's Water Ice Franchise Co. v. Simply Ices, Inc., No. 08-2011, 2008 WL 4483812, at *4 (E.D. Pa. Sept. 30, 2008); Maiocco v. Greenway Capital Corp., No. 97-0053, 1998 WL 48557, at *6 (E.D. Pa. Feb. 2, 1998); United Steelworkers of Am., AFL-CIO-CLC v.

---

[4]     Johnson v. Directory Assistants, Inc., 797 F.3d 1294, 1301 (11th Cir. 2015); Laws v. Morgan Stanley Dean Witter, 452 F.3d 398, 400 (5th Cir. 2006); Alexander Julian, Inc. v. Mimco, Inc., 29 Fed. App'x 700, 703 (2d Cir. 2002); El Dorado Sch. Dist. No. 15 v. Cont'l Cas. Co., 247 F.3d 843, 848 (8th Cir. 2001); Floyd Cty. Bd. Of Educ. V. EUA Cogonex Corp., No. 98-6273, 1999 WL 1023704, at *2, (6th Cir. Nov. 5, 1999); Fogelman v. Testerman, No. 98-1782, 1998 WL 795194, at *2 (4th Cir. Nov. 17, 1998).  See also Mandell v. Reeve, Nos. 10-6530, 10-7389, 2011 WL 4585248, at *6 (S.D.N.Y. Oct. 4, 2011) (stating that Tempo Shain Corp. v. Bertek, Inc., 120 F.3d 16 (2d Cir. 1997), "stands for the proposition that *absent a reasonable basis*, an arbitration panel's refusal to grant an adjournment of a hearing due to a medical emergency constitutes misconduct if it results in the exclusion of material evidence prejudicing the parties in the dispute.") (emphasis added)).

<u>Bldg. & Constr. Trades Dep't of Am. Fed'n of Labor-Congress of Indust. Orgs.</u>, No. 95-6737, 1996 WL 596125, at *9 (E.D. Pa. Oct. 17, 1996).  A-1 has not shown these rulings are contrary to any jurisprudential principle or would not be adopted by the Third Circuit, even if applying the fair hearing standard.

      Accordingly, the Court applies the standard advocated by Impala in reviewing A-1's motion to vacate the Final Award.

2.    <u>Tribunal Had "Reasonable Basis" to Refuse Postponement of Hearing</u>

      Thus, the question before the Court is whether the Tribunal had *any* reasonable basis to deny A-1's request to postpone the oral evidentiary hearing.  Here, the Tribunal had not one, but several, reasonable bases upon which to ground its decision to deny A-1's request and conduct the oral evidentiary hearing as scheduled.

      First, the Tribunal had a reasonable basis in refusing to postpone the hearing because the parties had ample time to prepare for the oral evidentiary hearing, which had been set for approximately one year.  <u>See</u> <u>Vitarroz Corp. v. G. Willi Food Int'l Ltd.</u>, 637 F. Supp. 2d 238, 250 (D. N.J. 2009) (refusing to vacate arbitration award where "[b]oth parties in this action were given ample time to investigate the various claims through extensive discovery, and each party was well prepared to present their respective arguments"); <u>see also</u> <u>Hadden v. UBS Fin. Servs., Inc.</u>, No. 15-0153, 2015 WL 6680902, at *3 (W.D. Ky. Oct. 29, 2015) (denying petition to vacate where "matter . . . had been ongoing for multiple years and [panel] believed the parties had ample time to prepare and think through the case").  The first procedural hearing was held on June 12, 2014.  (Final Award ¶ 24).  Procedural Order No. 1, which was issued by the Tribunal on June 16, 2014 (Final Award ¶ 25), provides that the oral evidentiary hearing was to take place on "6 to 10 July 2015 (with 13 to 15 July in reserve)."  (Proc. Order at 3).  Amended Procedural

Order No. 1, which was issued on December 12, 2014 (Final Award ¶ 30), provided the same dates.  (Am. Proc. Order at 3).

Second, in the interim between the issuance of Procedural Order No. 1 and the oral evidentiary hearings in July of 2015, both Impala and A-1 submitted briefing, witness statements, expert reports, and engaged in extensive discovery.  (See, e.g., Final Award ¶¶ 13-89).  By the time the oral evidentiary hearing began on July 6, 2015, the parties had "exchanged 275 pages of detailed and comprehensive legal arguments, 236 pages of factual evidence in the form of sworn witness statements, 136 pages of expert evidence in the form of expert reports, 639 documentary exhibits and 88 legal exhibits."  (Pls.' Opp'n, Ex. 1 ("Francis Decl.") ¶ 7); see also Final Award ¶¶ 27, 31, 51, 62).[5]

Third, A-1 filed its "*third* and *fourth* [witness statements] of Mr. Rajesh Seth" (Final Award ¶ 62) (emphases added) on June 3, 2015 (id.), approximately one month before the hearing was to take place.[6]  In all, Mr. Seth provided four (4) witness statements in the course of the arbitral proceedings.  (First O'Hayer Decl., Exs. R, S, T, U).  Given these "multiple submissions" and "voluminous supporting materials," Transtech Indus., Inc. v. A&Z Septic Clean, 270 Fed. App'x 200, 209 (3d Cir. 2008), the Court is persuaded that the Tribunal had a reasonable basis in refusing to postpone the hearing notwithstanding Mr. Seth's absence, particularly as Mr. Seth had already submitted multiple witness statements as close to a month before the oral evidentiary hearing.

Fourth, the Tribunal required, and received, post-hearing briefing from both Impala and A-1.  On the last day of the hearings, the Tribunal discussed, with the parties, the filing of post-

---

[5]      A-1 has not denied this catalogue of submissions, either as presented by Impala or the Tribunal in its Final Award.

hearing briefs.  (First O'Hayer Decl., Ex. Q ("Day 3 Tr.") 126:23-128:4).  On July 24, 2015,

after the hearing, Impala notified the Tribunal that the parties had agreed "[t]o file post-hearing

briefs of a maximum of 75 pages on 11 September 2015."  (Final Award ¶ 95).  Both parties

submitted their post-hearing briefs on that date, and indeed filed additional exhibits and engaged

in further briefing, all of which was received by the Tribunal.  (Final Award ¶¶ 97-101).  The

Tribunal certainly had a reasonable basis on which to proceed when post-hearing briefing, to be

submitted over two months from the conclusion of the oral evidentiary hearing, could mitigate

the effects a representative's absence.  See Ottawa Office Integration, Inc., 132 F. Supp. 2d at

221 (noting, in finding arbitrator had reasonable basis for refusal to postpone hearing, that

"arbitrator was willing to accept post-hearing submissions" from absent party).

        However, A-1 has failed to give any good reason why it could not have filed an offer of

proof at some point during the arbitration proceedings or, if Mr. Seth was still too ill to prepare

such a statement, request from the Tribunal an extension of time to file such an offer of proof.

The record contains a showing that when the Tribunal asked if A-1 had any objection to closing

the record, A-1's counsel answered in the negative.  (Day 3 Tr. 129:7-11).  There was nothing to

prevent A-1's counsel at the arbitration from requesting a further opportunity to submit a

statement for Mr. Seth.  A-1's arguments that Impala did something improper by deciding not to

cross-examine Mr. Seth ignores the strategic decision-making which a party still has whether in

an arbitration or in a courtroom.  Impala did not breach any covenant or rule of procedure by

deciding not to cross-examine Mr. Seth, even doing so close to the reserved November date.  A-1

does not show any authority that would allow this Court to consider the proposed "offer of

proof" submitted by A-1 in this Court, when A-1 has failed to show that the Tribunal violated

---

[6]        On that same date, A-1 submitted an additional witness statement prepared by Mr. Vinay Somera, which
was only filed in accordance with permission secured from the Tribunal over Impala's objection.  (Final Award

any procedural or substantive rights of A-1 in its scheduling and disposition decisions at the arbitration.

A-1's seven points, though artfully presented, are at bottom an attempt to obtain from this Court a *de novo* review of issues already presented to, and rejected by, the Tribunal.  However, "[t]he issue is not whether this Court would have acted in the same manner, but rather whether the arbitrator had a 'reasonable basis' for denying the requested adjournment."  Ottawa Office Integration, Inc., 132 F. Supp. 2d at 221.  Here, the Tribunal acted in an eminently reasonable manner in refusing to grant A-1's application to postpone the hearing.  Accordingly, the Court will deny A-1's motion for vacatur of the Final Award under § 10(a)(3).

3.   A-1 was Not Denied a "Fair Hearing"

Even if the Court were to accept A-1's position that, in the Third Circuit, it must apply only the "fair hearing" test, the same result follows.  "[V]acatur pursuant to section 10(a)(3) is warranted only where 'the arbitrator's refusal to hear proffered testimony so affects the rights of a party that it may be said that he was deprived of a fair hearing.'"  Century Indem. Co. v. Certain Underwriters at Lloyd's, London, subscribing to Retrocessional Agreement Nos. 950548, 950549, 950646, 584 F.3d 513, 557 (3d Cir. 2009) (quoting Teamsters Local 312 v. Matlack, Inc., 118 F.3d 985, 995 (3d Cir. 1997)).  A-1 analogizes its position principally to two cases, Coastal General Construction Services Corp. v. Virgin Islands Housing Authority, 98 Fed. App'x 156 (3d Cir. 2004), and Tempo Shain Corp. v. Bertek, Inc., 120 F.3d 16 (1997).  However, neither case is similar to the facts of this case.

Coastal General involved egregious tactics that are simply not at play here.  In that case—less than 24 hours before the arbitration proceeding was scheduled to begin—Coastal presented its adversary, VIHA, with an amended claim and several volumes of supporting

¶¶ 59-62).

evidence.  <u>Coastal Gen. Constr. Servs., Inc. v. Virgin Islands Hous. Auth.</u>, 238 F. Supp. 2d 707, 708 (D. V.I. 2002).  VIHA objected both before and at the close of the proceeding, but the arbitrator nonetheless continued with the arbitration hearing and ultimately awarded Coastal substantial monetary relief.  <u>Id.</u>  VIHA subsequently brought suit in the territorial court to vacate the arbitrator's award under § 10(a)(3) for failure to postpone the hearing.  <u>Id.</u>  The territorial court granted VIHA's motion, which the district court affirmed.  <u>Id.</u> The Third Circuit agreed with the territorial court that Coastal's "eleventh-hour tactics" amounted to misconduct which deprived VIHA of a fair hearing.  <u>Coastal Gen.</u>, 98 Fed. App'x at 159.  Here, however, as exhaustively detailed in the Final Award, Impala and A-1 provided each other with briefing, factual statements, expert reports, and supporting evidence.  (Final Award ¶¶ 13-89).  Thus, as was not the case in <u>Coastal General</u>, by the time the parties arrived in London for the oral evidentiary hearing, the issues were well developed and counsel thoroughly prepared.[7]

A-1 urges that <u>Tempo Shain</u> is instructive because both cases involve witnesses whose unavailability was caused by a medical issue.  (Mot. Vacate at 10).  The Court disagrees.  In <u>Tempo Shain</u>, the party against which an award was ultimately issued, Bertek, intended to call a witness to provide "crucial testimony concerning the negotiations and dealings between the parties which it claims only [that witness] could testify."  <u>Tempo Shain Corp.</u>, 120 F.3d at 17. The Second Circuit concluded that the arbitration panel had no reasonable basis to proceed without the witness's testimony, and vacated the district court's confirmation of the arbitration award.  <u>Id.</u> at 21.  Here, however, there is a crucial difference.  It was not A-1 that intended to call Mr. Seth as a witness, but rather Impala, which had reserved, but then waived, any cross-

---

[7]        For similar reasons, <u>Allendale Nursing Home, Inc. v. Local 1115 Joint Bd.</u>, 377 F. Supp. 1208, 1213 (S.D.N.Y. 1974) is inapposite.  There, the court vacated an award where the arbitrator had already granted multiple adjournments to the other party and had also permitted the other party to introduce more issues.  Neither of those factual circumstances is present here.

examination of Mr. Seth.  Under Amended Procedural Order No. 1, and as admitted by A-1, the only way the parties could obtain the live testimony of a witness at the oral evidentiary hearing was through cross-examination.  (Am. Proc. Order §§ 6.1, 6.5; see also O'Hayer Decl. ¶ 13(f) ("[I]f a witness was not called for cross-examination there was no procedure to allow them to give oral evidence.")).  Indeed, the only party that would have been prejudiced by Mr. Seth's unavailability is Impala because it was the only party entitled to cross-examination of Mr. Seth under the Procedural Orders.

Here, the parties agreed by contract, in the Dispute Resolution Agreement, to resolve their issues via arbitration.  (See generally D.R. Agmt.).  "In bilateral arbitration, parties forgo the procedural rigor and appellate review of the courts in order to realize the benefits of private dispute resolution: lower costs, greater efficiency and speed, and the ability to choose expert adjudicators to resolve specialized disputes."  Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp., 559 U.S. 662, 685 (2010).  Both parties having received these benefits of the bargain struck, the Court finds that A-1 received a full and fair hearing and therefore will not disturb the Final Award.[8]

## B.    Impala's Motion to Confirm the Final Award

Impala has moved to confirm the Final Award.  The FAA provides that "unless the award is vacated, modified, or corrected as prescribed in [9 U.S.C. §§ 10-11],' the Court 'must grant' a motion to confirm the award."  Kulchinsky v. Ameriprise Fin., No. 11-319, 2011 WL 2745967, at *14 (E.D. Pa. July 14, 2011) (quoting 9 U.S.C. § 9).[9]  As the Court has determined there is no

---

[8]      Because the Court has already determined that A-1 was not denied a full and fair hearing, and that the Tribunal had a reasonable basis to deny A-1's request for an adjournment, the Court will not engage in a lengthy discussion of Impala's argument regarding waiver, but finds that it has merit as an alternative grounds for decision.

[9]      The Court recognizes that the Dispute Resolution provides "[t]he arbitration award *may* be confirmed by the U.S. Court pursuant to Section 9-11 of the Federal Arbitration Act, 9 U.S.C. §§ 9-11."  (D.R. Agmt. § 6) (emphasis added).  For the reasons indicated in this Memorandum, the Court is granting Impala's motion for confirmation, in accordance with the terms of the Dispute Resolution Agreement and the FAA.

basis upon which to vacate, modify, or correct the Final Award, the Court grants Impala's motion to confirm.

## V.   CONCLUSION

For the foregoing reasons, the Court will GRANT Impala's motion to confirm and DENY A-1's motion to vacate.

An appropriate Order follows.